UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERRY B.,

　　　　　　　　　　　　Plaintiff,

　　　　v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

　　　　　　　　　　　　Defendant.

Case No. 3:21-cv-5115-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 5. This matter is fully briefed. *See* Dkts. 21, 25, 26.

Plaintiff's severe impairments include generalized anxiety disorder; panic disorder; major depressive disorder; and, post-traumatic stress disorder ("PTSD"), among other impairments found severe by the ALJ, after getting injured by an IED in Iraq. *See* AR 19; *see also* AR 625. Although plaintiff alleges various mental limitations, the ALJ found a discrepancy within the mental status examination of doctors where no discrepancy appears to exist. *See* AR 31. No other appropriate rationale is provided in the ALJ's written decision. Therefore, the ALJ's rejection of the doctors' opinions is not based on substantial evidence in the record. Because this error is not harmless, this matter must be reversed and remanded for further administrative proceedings.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FACTUAL AND PROCEDURAL HISTORY

On May 14, 2019, plaintiff filed applications for DIB and SSI, alleging disability as of May 1, 2005, later amended to October 1, 2018. *See* Dkt. 16, Administrative Record ("AR"), p. 16 . The application was denied on initial administrative review and on reconsideration. *See* AR 16. A hearing was held before Administrative Law Judge David Johnson ("the ALJ") on June 25, 2020. *See* AR 16, 106-37. In a decision dated August 14, 2020, the ALJ determined plaintiff to be not disabled. *See* AR 18-40. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In plaintiff's Opening Brief, plaintiff maintains the ALJ erred by: (1) failing to provide legally sufficient reasons not to include in plaintiff's residual functional capacity ("RFC") the medical opinions regarding limitations from Drs. Wingate, Wilkinson, and Atkisson; (2) failing to provide legally sufficient reasons not to include in plaintiff's RFC the opinions regarding limitations from LMHC Trukositz; and (3) failing to provide legally sufficient reasons not to include in plaintiff's RFC the subjective claims of plaintiff. "Open," Dkt. 21, p. 1. Defendant contends substantial evidence supports the ALJ's assessment of competing opinion evidence as well as the assessment of plaintiff's subjective complaints. "Response," Dkt. 25, p. 2.

Although plaintiff additionally raises a Constitutional issue, discussion of such is not necessary to resolve this matter, and as such, will not be reached. *See* Open, 1.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir.

2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

<u>DISCUSSION</u>

**I.      The ALJ erred when evaluating the medical evidence.**

Plaintiff contends the ALJ erred when evaluating the medical evidence, such as the medical opinion evidence provided by Drs. Wingate, Wilkinson, and Atkisson. Open, Dkt. 21, p. 1. Defendant contends substantial evidence supports the ALJ's assessment of competing opinion evidence. Response, Dkt. 25, p. 2.

In 2017, the Commissioner issued new regulations governing how ALJs are to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012 at *3 (W.D. Wash. Nov. 10, 2020) (unpublished opinion) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to

how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

As plaintiff filed the claim on May 14, 2019, the ALJ applied the new regulations. *See* AR 16, 28. Therefore, based on the above considerations, the Court will determine whether the ALJ's decision is free of legal error and supported by substantial evidence.

A. Dr. Terilee Wingate Ph.D. and Dr. William Wilkinson Ed.D., examining doctors

Dr. Wingate examined plaintiff on October 16, 2018 and performed a mental status examination. *See* AR 625-32. For example she noted plaintiff "was very tense and somewhat guarded." AR 628. Dr. Wingate also noted plaintiff's "knee was bouncing and he was shaky." *See id*. Dr. Wingate assessed plaintiff's mood was "dysphoric and very agitated," while his affect was "blunted." *See* AR 629. Dr. Wingate diagnosed plaintiff with post traumatic stress disorder, chronic, panic disorder, and persistent depressive disorder. *See* AR 627.

Dr. Wingate assessed plaintiff suffered from marked limitation in various work related abilities, including the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; to adapt to changes in a routine work setting; to maintain appropriate behavior in a work setting; and, to set realistic goals and plan independently. *See* AR 627. As noted by the ALJ, other than opining only moderate limitation with regard to adapting to changes in a work setting, after his own examination, Dr. William Wilkinson, Ed.D "adopted Dr. Wingate's [] opinion." *See* AR 31.

The ALJ included the following discussion in the written decision:

> Dr. Wilkinson's and Wingate's opinions are unpersuasive in that neither Dr. Wilkinson nor Dr. Wingate had more than very minimal records available to review prior to forming their opinions. For example, the only record Dr. Wingate was able to review was a client demographic and documentation request form completed by Dr. Paymaster in September 2018 (internal citation to *see, e.g.,* 7F/7). The only record Dr. Wilkinson was able to review was Dr.

Wingate's aforementioned exam and opinion report (internal citation to *see, e.g.*, 7F/15). Furthermore, Dr. Wilkinson and Wingate's opined marked limitations are inconsistent with, and unsupported by, their own exam findings, showing that the claimant had a normal thought process, normal thought, content, normal mental orientation, normal mental perception, normal memory, normal fund of knowledge, normal concentration, normal insight, normal judgement, and normal ability to engage in abstract thought (internal citations to 1F/22; 7F/19). They are also inconsistent with, and unsupported by, the claimant's ability to go out alone, drive a car, drive other people around, pay bills, count change, handle a savings account, use a checkbook or money orders, tend to his own personal care, do laundry, do the dishes, cook, clean, assist with yardwork, help care for children, shop by computer, go fishing, play games on his cell phone, provide information about his health, describe his prior work history, understand and consent to his own medical treatment, respond to questions from medical providers, enter into legally binding agreements on his own behalf, and provide detailed historical information in multipage forms (internal citations to *see, e.g.,* Hearing Testimony; 1E; 1F/18-19; 2E/2-4; 3B; 4B; 7F/15-16; 8F/2-4, 6; 9F/2, 4). Nevertheless, Dr. Wilkinson and Wingate's mild to moderate limitations – which are more consistent with the claimant's overall record – are reflected in the claimant's residual functional capacity in that the claimant can perform only low stress work as defined in his residual functional capacity ["RFC"].

AR 31.

The ALJ has not explained why the fact that Drs. Wingate and Wilkinson reviewed minimal records negates their opinions based on their own observations and mental status examinations. *See id*. It is logical that performing a mental status examination when assessing mental limitations of an individual is preferred over simply looking over assessments performed by other people, as plaintiff argues. The ALJ has not explained the contrary conclusion, and, unexplained, it does not entail substantial evidence for the failure to credit fully Dr. Wingate's or Dr. Wilkinson's opinions.

The ALJ has not provided substantial evidence for the failure to credit fully the examining doctors' opinions by noting minimal records they reviewed. Next, the ALJ, in a somewhat conclusory fashion, finds the examining doctors' opinions to be inconsistent with and unsupported by their own mental status examinations.

1        For the reasons discussed below, the Court concludes that this finding by the ALJ of a

2  lack of support with or inconsistency with the mental status examination is not based on

3  substantial evidence. As reflected in the record, Drs. Wingate and Wilkinson opined plaintiff's

4  mental and logical functioning largely were within normal limits, but plaintiff's emotional and

5  affective processing were not: the ALJ's finding of a discrepancy appears to reflect a

6  misunderstanding of human psychology and the mental status examination.

7        The Court notes that "experienced clinicians attend to detail and subtlety in behavior,

8  such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and

9  the unspoken message of conversation. The Mental Status Examination allows the organization,

10  completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker,

11  The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical

12  examination, the Mental Status Examination is termed the *objective* portion of the patient

13  evaluation." *Id.* at 4 (emphasis in original).

14        The Mental Status Examination generally is conducted by medical professionals skilled

15  and experienced in psychology and mental health. Although "anyone can have a conversation

16  with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's

17  'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric

18  Mental Status Examination 3. A mental health professional is trained to observe patients for

19  signs of their mental health not rendered obvious by the patient's subjective reports, in part

20  because the patient's self-reported history is "biased by their understanding, experiences,

21  intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person

22  suffering from a mental illness to be unaware that her "condition reflects a potentially serious

23  mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

24

25

ORDER - 6

1    When an ALJ seeks to discredit a medical opinion, he must explain why his own

2    interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725

3    (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*,

4    874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim,

5    clinical and laboratory data may consist of the diagnosis and observations of professional trained

6    in the field of psychopathology. The report of a psychiatrist should not be rejected simply

7    because of the relative imprecision of the psychiatric methodology or the absence of substantial

8    documentation") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (quoting

9    *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118

10   (7th Cir. 1990) ("judges, including administrative law judges of the Social Security

11   Administration, must be careful not to succumb to the temptation to play doctor. The medical

12   expertise of the Social Security Administration is reflected in regulations; it is not the birthright

13   of the lawyers who apply them. Common sense can mislead; lay intuitions about medical

14   phenomena are often wrong") (internal citations omitted)).

15   Because the ALJ provided a lay interpretation of the mental status examination, finding a

16   discrepancy where none existed, the Court concludes the ALJ's finding of a inconsistency with

17   the mental status examination, or lack of support with it, is not based on substantial evidence.

18   The ALJ also found Dr. Wingate's and Dr. Wilkinson's opinions to be inconsistent with

19   and unsupported by various activities of daily living of plaintiff, such as driving a car, paying

20   bills, counting change, handling a savings account, tending to personal care, doing laundry,

21   doing dishes, playing games and providing detail historical information, among other activities

22   of daily living. *See* AR 31. However, it does not appear that a single one of these activities are

23   performed within a schedule, require the maintenance of regular attendance, require one to be

24

25

ORDER - 7

1   punctual within customary workplace tolerances without special supervision, require the

2   maintenance of appropriate behavior in a work setting, or require the completion of a normal

3   workday and workweek without interruptions from psychologically based symptoms, the

4   abilities both doctors opined plaintiff suffered from marked limitations in, as noted by the ALJ.

5   *See* AR 31; *see also* AR 627. As none of the activities the ALJ mentioned appear to require

6   adequate functioning in any of the activities in which the doctors opined plaintiff suffered

7   marked limitations in, there does not appear to be any inconsistency or lack of support from this

8   aspect of the record. *See* AR 31. Therefore, this discussion as well does not provide substantial

9   evidence for the ALJ's failure to credit fully these two examining doctors' opinions into

10  plaintiff's RFC.

11       For the reasons stated, the Court concludes the ALJ failed to provide rationale based on

12  substantial evidence in the record for the failure to credit fully the opinions from examining

13  doctors, Drs. Wilkinson and Wingate, into plaintiff's RFC.

14       For the reasons stated below, the Court concludes also this error is not harmless.

15       B.  <u>Dr. Reginald Atkisson, PhD, examining doctor</u>

16       The Court already has concluded that this matter should be reversed and remanded for

17  further administrative consideration, *see supra*, Section I.A, *see also infra*, Section II. For this

18  reason and based on the record, the Court concludes the ALJ's rejection of the marked social

19  limitations from Dr. Atkisson on the basis that his medical record includes the notation that

20  plaintiff's marked limitation is secondary to primary association with family needs to be assessed

21  further, perhaps with a re-contact of the doctor. Plaintiff's argument regarding the arguably

22  ambiguous terminology utilized by Dr. Atkisson is persuasive, as is plaintiff's argument that it is

23  the duty of the ALJ to resolve ambiguities in the record. *See* Open 14 (citing *Treichler v. Comm'r*

24

25

ORDER - 8

*of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Robbins v. Comm'r of SSA*, 446 F.3d 880, 886 (9th Cir. 2006)).

## II.      Harmless error

The Ninth Circuit has "long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless if it is "'inconsequential to the ultimate non[-]disability determination.'" *Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

Drs. Wingate and Wilkinson opined plaintiff suffered from marked limitation in various work related abilities including the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; to maintain appropriate behavior in a work setting; and, to set realistic goals and plan independently. *See* AR 627.

At plaintiff's administrative hearing, the vocational expert ("VE") testified that a worker in the relevant occupations for plaintiff can be off task "[n]o more than about 10%," in order to maintain employment. *See* AR 133. Following questioning from plaintiff's attorney, the VE testified that if one such worker is "talking back to the supervisor on a repeated basis, I'd say 3 or 4 times a month let's say, and they walk away, you know, or act inappropriately with the supervisor that's going to be problematic. They're probably not going to keep their job." *See* AR 134-35. Similarly, the VE testified as follows:

> [I]f a person is in a work situation and they are disrupting their coworkers to a significant amount to the point where the other people are not getting the work done, and obviously of the person is doing the distraction is not getting their work done because they're busy distracting other workers… About 10% being a factor with being distracted at work and not being focused on work, if it occurs more than that it's going to be problematic in the workplace. Generally is not acceptable  …

AR 135.

Plaintiff argues the limitations in social interaction found by Drs. Wingate and Wilkinson, as well as Dr. Atkinson, align well with "the VE's testimony to establish disability: off-task more than 10% of the day; more than one absence per month; 10% distracting or being distracted by others due to inappropriate behavior." Reply 7-8 (citing AR 133-35); *see also* AR 627. Plaintiff's argument is persuasive.

The Court concludes the ALJ's error in failing to provide substantial evidence supported by the record for the failure to credit fully the opinions of social limitations by Drs. Wingate and Wilkinson is not harmless error as it is not "'inconsequential to the ultimate non[-]disability determination.'" *See Molina*, *supra,* 674 F.3d at 1117 (quoting *Carmickle*, 533 F.3d at 1162).

### III.      Regarding the ALJ's evaluation of plaintiff's subjective claims.

Plaintiff contends the ALJ erred by failing to provide sufficient reasons for not incorporating fully plaintiff's subjective claims; however, the Court already has concluded that the ALJ committed harmful error and the medical evidence should be reviewed anew, *see supra*, Sections I and II. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

### IV.      This Court should not reverse with a direction to award benefits.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of

1 benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v.*

2 *Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). After concluding at step one that an ALJ has erred

3 when considering such medical evidence or plaintiff's testimony, (not harmless error), the Court

4 next should "turn to the question whether further administrative proceedings would be useful."

5 *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citations

6 omitted). When looking at this issue, the Court should consider if the record is free from relevant

7 conflicts. *See id.*

8        Based on a review of the record, the Court concludes that the record is not free from

9 important and relevant conflicts, such as conflicts (and ambiguities) in the medical evidence.

10 Therefore, this matter should be reversed for further administrative proceedings, including a *de*

11 *novo* hearing, not with a direction to award benefits. *See id.*

12 CONCLUSION

13        Based on the foregoing discussion, the Court concludes the ALJ improperly determined

14 plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further

15 administrative proceedings in accordance with the findings contained herein.

16        Dated this 23rd day of December, 2021.

17

18

19

20 David W. Christel
United States Magistrate Judge

21

22

23

24

25

ORDER - 11